UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RONNOCO COFFEE, LLC, and ) | |
| MID-AMERICA ROASTERIE, LLC, ) | |
| ) | |
| Plaintiffs/Counterclaim Defendants, ) | |
| ) | |
| vs. ) | Case No. 4:16CV1336 JCH |
| ) | |
| WESTFELDT BROTHERS, INC., ) | |
| ) | |
| Defendant/Counterclaim Plaintiff/ ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| SCOTT MEADER and ERIC BOMBALL, ) | |
| ) | |
| Third-Party Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Motion to Dismiss Amended Counterclaims and Third-Party Complaint of Plaintiffs/Counterclaim Defendants Ronnoco Coffee, LLC and Mid-America Roasterie, LLC, and Third-Party Defendants Scott Meader and Eric Bomball. (ECF No. 49). The motion is fully briefed and ready for disposition.

## BACKGROUND[1]

Westfeldt Brothers, Inc. ("Westfeldt") is a corporation organized and existing under the laws of the State of Louisiana, with its principal place of business in New Orleans, Louisiana. (First Amended Counter-Claims and First Amended Third-Party Complaint ("Amended Counterclaim"), ¶ 1). Westfeldt is in the business of importing green coffee to supply to coffee roasters. (*Id.*, ¶ 9).

---

1 The Court's background section is taken from Westfeldt's First Amended Counter-claims and First Amended Third-Party Complaint, to which Counter-Claim and Third Party Defendants have not yet filed an answer.

˘ 1 ˘

Sometime in 2010, U.S. Roasterie, Inc. ("U.S. Roasterie") became a customer of Westfeldt. (Amended Counterclaim, ¶ 10). Throughout their course of dealing, Westfeldt and U.S. Roasterie entered into futures contracts for the purchase of green coffee. (*Id.*, ¶ 11). Over time, U.S. Roasterie became delinquent in its payments due under the terms of the futures contracts. (*Id.*, ¶ 12).

In the late summer or fall of 2014, U.S. Roasterie and Counterclaim Defendant Ronnoco Coffee, LLC ("Ronnoco Coffee") entered into negotiations for the sale of U.S. Roasterie's assets to Ronnoco Coffee. (Amended Counterclaim, ¶¶ 2, 13). In conducting due diligence during the negotiations, Ronnoco Coffee became aware of the substantial debt that Westfeldt had allowed U.S. Roasterie to incur. (*Id.*, ¶ 14). Ronnoco Coffee ultimately did not complete the purchase of U.S. Roasterie's assets.[2]

At some subsequent point U.S. Roasterie's lender, Great Western Bank, took control of the assets of U.S. Roasterie. (Amended Counterclaim, ¶ 17). All of U.S. Roasterie's assets then were formally acquired by Counterclaim Defendants Ronnoco Coffee and Mid-America Roasterie, LLC ("Mid-America")[3], pursuant to a Sale Agreement dated February 9, 2015. (*Id.*, ¶¶ 3, 26). That same day Westfeldt received two nearly identical letters, one from Ronnoco Coffee and one from Dixon Avenue Holdings, LLC[4], notifying it that the assets of U.S. Roasterie had been taken over by Great Western Bank and then sold to Mid-America, a subsidiary of Ronnoco Coffee, and that no invoices prior to the asset sale would be paid because Ronnoco Coffee did not assume any of U.S. Roasterie's liabilities. (*Id.*, ¶ 28).[5]

---

2 According to Westfeldt, Ronnoco Coffee and U.S. Roasterie instead formulated a mutually beneficial plan, whereby Ronnoco Coffee could acquire U.S. Roasterie's assets free and clear of the substantial debt owed to Westfeldt. (Amended Counterclaim, ¶ 16).
3 According to Westfeldt, Mid-America was created prior to the asset sale, in an attempt to shield the actual buyer, Ronnoco Coffee, from liability related to the transaction. (Amended Counterclaim, ¶ 25).
4 According to Westfeldt, Dixon Avenue Holdings, LLC was created prior to the asset sale, in an attempt to shield the actual seller, U.S. Roasterie, from liability related to the transaction. (Amended Counterclaim, ¶ 25).
5 According to Westfeldt, as of September, 2015, U.S. Roasterie was in breach of 77 contracts with Westfeldt, and

On or around the day after the asset sale closing, a telephone conference took place between Ronnoco Coffee, U.S. Roasterie's former CEO and CFO, and Westfeldt. (Amended Counterclaim, ¶ 30). According to Westfeldt, Ronnoco Coffee expressly agreed during the conference to assume certain futures contracts that were previously in place between Westfeldt and U.S. Roasterie. (*Id.*, ¶ 32). Westfeldt maintains that although Ronnoco Coffee/Mid-America (collectively "Ronnoco") initially took delivery of the coffee subject to the futures contracts, it later informed Westfeldt that it would not continue taking delivery in fulfillment of the remaining assumed futures contracts. (*Id.*, ¶ 39). Westfeldt further alleges that as of September, 2016, the value of the outstanding futures contracts assumed by Ronnoco was $145,776.88. (*Id.*, ¶ 40).

Westfeldt filed its initial Counterclaims and Third-Party Complaint against Ronnoco, Meader and Bomball (collectively "Movants") on September 22, 2016. (ECF No. 9).[6] Movants filed a Motion to Dismiss on October 20, 2016, asserting all Westfeldt's counterclaims and third-party claims should be dismissed for failure to state a claim upon which relief can be granted. (ECF No. 18). In a Memorandum and Order entered February 16, 2017, the Court granted in part and denied in part Movants' motion. (ECF No. 43). The Court further granted Westfeldt leave to file a First Amended Counterclaims and Third Party Complaint. (*Id.*).

Westfeldt filed its First Amended Counter-claims and First Amended Third-Party Complaint against Movants on March 6, 2017. (ECF No. 46). In its Amended Counterclaim, Westfeldt asserts the following claims against Ronnoco: Breach of Contract/Successor Liability (Count I); Open Account/Successor Liability (Count II); Breach of Contract/Single Business Entity/Alter Ego (Count III); Open Account/Single Business Entity (Count IV); Unfair Trade Practices (Count V);

---

owed a total balance of $2,930,147.10 to Westfeldt. (Amended Counterclaim, ¶ 27).

6 Westfeldt's initial Counterclaim was filed in response to Ronnoco's Complaint for Declaratory Relief, filed August 17, 2016). (ECF No. 1).

Conversion/Civil Conspiracy to Commit Conversion (Count VI); Unjust Enrichment (Count VII); and Breach of Futures Contracts (Count VIII). Westfeldt also asserts a claim for Conspiracy to Tortiously Interfere with Contractual Relations against Third-Party Defendants Scott Meader and Eric Bomball. (Count IX).

As noted above, Movants filed the instant Motion to Dismiss Amended Counterclaims and Third-Party Complaint on April 3, 2017, asserting all Westfeldt's counterclaims and third-party claims must be dismissed for failure to state a claim upon which relief can be granted. (ECF No. 49).

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion to dismiss, the Court must view the allegations in the complaint in the light most favorable to plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

# DISCUSSION

I. **<u>Successor Liability (Counts I-II)</u>**

Under Iowa law[7], the basic principle of corporate successor liability is that "a corporation that purchases the assets of another corporation assumes no liability for the transferring corporation's debts and liabilities. Exceptions arise only in four circumstances: (1) the buyer agrees to be held liable; (2) the two corporations consolidate or merge; (3) the buyer is a 'mere continuation' of the seller; or (4) the transaction amounts to fraud." *Lumley v. Advanced Data-Comm, Inc.*, 2009 WL 2514084, at *1 (Iowa App. Aug. 19, 2009) (citations omitted). In its response brief, Westfeldt contends that the third and fourth exceptions apply in this case. (Westfeldt's Memorandum in Opposition to Movants' Second Motion to Dismiss ("Westfeldt's Opp."), PP. 2-8).

With respect to exception four, "Iowa courts have not elaborated on the elements of such a claim." *Grand Laboratories, Inc. v. Midcon Labs of Iowa*, 32 F.3d 1277, 1281 (8th Cir. 1994). "Authorities suggest, however, that 'the fraud exception to the nonliability of successors is merely an application of the law of fraudulent conveyances.'" *Id.* (citations omitted). After concluding that the Iowa law of fraudulent conveyances applied to the claim before it, the Eighth Circuit in *Grand Laboratories* continued as follows:

> A fraudulent conveyance is…a transaction by means of which the owner of real or personal property has sought to place the land or goods beyond the reach of his creditors, or which operates to the prejudice of their legal or equitable rights. To recover on a fraudulent conveyance claim, a plaintiff-creditor must first show that the transferor actually owned the property that it allegedly fraudulently transferred. Moreover, the plaintiff-creditor must show that it was prejudiced by a transfer of assets. Prejudice requires the creditor to show that [it] would have received something which has become lost to [it] by reason of the conveyance.

*Id.* at 1281-82 (internal quotations and citations omitted).

---

7 The Court previously ruled that Iowa law controls the successor liability issue in this case. (*See* ECF No. 43, PP. 4-6).

In its earlier Order, the Court found the following allegations sufficient to set forth a claim for successor liability on the basis that the transaction at issue amounted to fraud:

> 16. Upon information and belief, Ronnoco and U.S. Roasterie formulated a mutually beneficial plan so that Ronnoco could acquire all of U.S. Roasterie's assets free and clear of the substantial debt owed to Westfeldt, and U.S. Roasterie's management and employees could all maintain their employment at the new contemplated successor company.
>
> 17. Pursuant to this plan, the parties caused or allowed U.S. Roasterie's lender, Great Western Bank, to "take control" of the assets of U.S. Roasterie so that U.S. Roasterie's assets would be sold to Ronnoco by the bank at a lesser cost rather than being sold directly by U.S. Roasterie….
>
> 29. After the asset sale was finalized, Howard Fischer, the former CEO of U.S. Roasterie, and Scott Meader, Ronnoco's CEO, gave a joint statement to VendingMarketWatch in which Mr. Fischer stated that the sale of U.S. Roasterie to Ronnoco was part of his "exit strategy," and noted that "people at U.S. Roasterie will continue in their current roles" and "all blends, packaging and outstanding customer service remain the same."…
>
> 43. ….[B]ecause the sale of the assets of U.S. Roasterie was a transaction entered into to escape liability, Ronnoco/Mid-America is liable to Westfeldt for the debts of U.S. Roasterie via successor liability….

(*See* ECF No. 43, P. 8, quoting Initial Counterclaim, ¶¶ 16-17, 29, 43).[8] The Court recognized that Westfeldt had a long way to go to prove that the sales transaction was fraudulent, especially in light of the fact that Ronnoco purchased U.S. Roasterie's assets not from the company itself, but from U.S. Roasterie's secured lender, Great Western Bank, who had foreclosed on the property. (*See Id.*, P. 8 n. 10, citing *Grand Laboratories*, 32 F.3d at 1282 (holding plaintiff's claim for successor liability on the basis of a fraudulent transfer of assets failed, as plaintiff presented no evidence that the seller had no other creditors, that plaintiff was entitled to priority over other creditors to any extent, or that the assets the seller transferred were unencumbered)). The Court nevertheless

---

8 Nearly identical allegations appear in Westfeldt's Amended Counterclaim. (*See* Amended Counterclaim, ¶¶ 16-17, 29, 49).

declined to dismiss Westfeldt's successor liability claims, finding consideration of the issue to be more appropriate on summary judgment, when the Court had a full record before it. (*Id.*).

In their Motion to Dismiss, Movants acknowledge the Court previously declined to dismiss Counts I and II of Westfeldt's Counterclaim. (Movants' Memorandum in Support of Motion to Dismiss, P. 15). Movants maintain, however, that new allegations and evidence provided by Westfeldt "contradict the core of its fraud theory and warrant reconsideration of the issue." (*Id.*).

Upon consideration, the Court finds that while Westfeldt's new allegations and evidence potentially render its successor liability claims even less plausible, they do not "contradict the core of its fraud theory," such that dismissal is appropriate at this stage. Rather, the Court remains unwilling to jettison the claims at the heart of Westfeldt's Amended Counterclaim without allowing for full discovery. This portion of Movants' Motion to Dismiss will therefore be denied.[9]

## II. Single Business Entity/Alter Ego (Counts III-IV)

In its February 16, 2017, Memorandum and Order, the Court held Westfeldt's claims regarding single business entity/alter ego were pled in too conclusory a manner to permit consideration of the grounds for dismissal raised in Movants' original motion to dismiss. (*See* ECF No. 43, PP. 8-9). In Counts III and IV of its Amended Counterclaim Westfeldt adds detail to its allegations, in a second attempt to hold Ronnoco liable for U.S. Roasterie's nearly three million dollar debt on the theory of single business entity and/or alter ego. (Amended Counterclaim, ¶¶ 61-100).

Upon consideration, the Court finds Westfeldt's claims are contradicted by its own allegations. In other words, in its background section Westfeldt pleads that its relationship with U.S. Roasterie began in 2010, and that over time U.S. Roasterie became delinquent in its payments.

---

[9] In light of the above ruling, the Court need not consider whether Westfeldt successfully has pled a claim for

(Amended Counterclaim, ¶¶ 10-12). Westfeldt continues to allege that by the time U.S. Roasterie and Ronnoco began negotiations for the sale of U.S. Roasterie's assets to Ronnoco in the late summer or fall of 2014, U.S. Roasterie already was in significant debt to Westfeldt. (*Id.*, ¶¶ 13-14). Finally, Westfeldt asserts that Ronnoco "specifically learned about U.S. Roasterie's debt to Westfeldt while conducting due diligence on U.S. Roasterie." (*Id.*, ¶ 14). With these allegations Westfeldt negates its own contentions that Ronnoco effectively controlled U.S. Roasterie throughout, that there was unified administrative control of the two entities, and that Ronnoco financed or effectively financed U.S. Roasterie as it incurred the great debt to Westfeldt. Under these circumstances, the Court finds Westfeldt's claims of single business entity/alter ego fail, and thus must be dismissed with prejudice.

### III. Unfair Trade Practices (Count V)

#### A. Choice Of Law

In their respective briefs, the parties disagree as to which state's laws apply to Count V of Westfeldt's Amended Counterclaim. "A district court sitting in diversity must apply the conflict of law rules for the state in which it sits." *Inacom Corp. v. Sears, Roebuck and Co.*, 254 F.3d 683, 687 (8th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). "Missouri has adopted the Restatement (Second) of Conflict of Laws which uses the 'most significant relationship' test to determine which state's laws govern." *Taylor v. Cottrell, Inc.*, 2015 WL 8021729, at *1 (E.D. Mo. Dec. 7, 2015) (citations omitted).[10] *See also Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir.) (citation omitted) ("Missouri courts apply the most-significant-relationship test as defined in the Restatement. Under this test, the

---

successor liability on the basis that Ronnoco is a mere continuation of U.S. Roasterie.
10 The most significant relationship test "is applied individually to each particular issue under the principle of '*depecage*.'" *Taylor*, 2015 WL 8021729, at *1 (citing *Johnson v. Avco*, No. 4:07CV1695 (E.D. Mo. 2009) (under the "conflict of law doctrine of *depecage*, different issues in a single case may be decided by laws of different states,

identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute."), *cert. denied*, 513 U.S. 964 (1994).

In order to determine which state has the most significant relationship with a particular issue, the Court must consider Restatement (Second) of Conflict of Laws § 6, which provides in relevant part as follows:

> (2) [T]he factors relevant to the choice of the applicable rule of law include
>
> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be applied.

These factors are afforded different weight and are applied differently depending upon the cause of action. *See Id.* at cmt. on subsec. (2)(c).

In analyzing tort claims, the Court further considers § 145 of the Restatement (Second) of Conflict of Laws. *Taylor*, 2015 WL 8021729, at *1. Under this section, the Court considers:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145(2).

Upon consideration of the foregoing, the Court will apply Louisiana law to this claim. "Missouri courts apply the law of the state where the injury occurred unless some other state has a more significant relationship with the occurrence or some overriding interest." *Taylor*, 2015 WL 8021729, at *1 (citation omitted). Here, the Court finds the place where the injury occurred was

---

if those states have the most significant relationship to those particular issues.")).

Louisiana. Taking the other factors into consideration does not alter the applicable law, because although the conduct causing the injury may have occurred outside Louisiana, Westfeldt's place of incorporation and place of business is Louisiana. Under these circumstances, the Court finds Louisiana has the most significant relationship with the issues raised in Westfeldt's unfair trade practices claim, and so its law will apply. *See Taylor*, 2015 WL 8021729, at *2 ("Missouri law establishes that where it is difficult to see clearly that a particular state has the most significant relationship to an issue, the trial court should apply the *lex loci delicti* rule; that is, it should apply the substantive law of the place where the injury occurred.").

### B. Application

The Louisiana Unfair Trade Practices and Consumer Protection Law makes "'unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce' unlawful." *NOLA 180 v. Treasure Chest Casino, LLC*, 91 So.3d 446, 449 (La. App. 2012) (quoting La. R.S. 51:1405)). "A practice is 'unfair' when it offends established public policy and when the practice is unethical, oppressive, unscrupulous or substantially injurious." *Id.* (citations omitted).

Upon consideration, the Court finds that Westfeldt's contentions regarding Ronnoco's alleged action directing U.S. Roasterie to stop payment on a previously issued check for $85,371.23 are sufficient to survive Movants' Motion to Dismiss. With respect to Westfeldt's claim regarding Ronnoco's liability for the entirety of the nearly three million dollar debt owed by U.S. Roasterie, as noted above Westfeldt's contention that Ronnoco controlled and/or conspired with U.S. Roasterie throughout in an effort to "hide from Westfeldt….facts that would have allowed and caused Westfeldt to put sufficient measures in place to protect its financial interests" (Amended Compl., ¶ 106), is belied by its earlier assertion that U.S. Roasterie became indebted to Westfeldt over a period of years, the majority of which transpired well before Ronnoco entered the scene. (Amended

Counterclaim, ¶¶ 10-14). The Court notes, however, that in its response to Ronnoco's motion Westfeldt apparently limits its claim to the amount of indebtedness that accrued specifically due to Ronnoco's actions during the time the parties allegedly were exploring and formulating the terms of the asset forfeiture and sale. (Westfeldt's Opp., PP. 14-15). Under these circumstances, the Court will allow Westfeldt's unfair trade practices claim to proceed, to permit discovery regarding this more limited claim.

### IV.  Conversion (Count VI)

For the reasons set forth in section III(A), *supra*, the Court finds Louisiana law applies to Westfeldt's conversion claim. The Court finds consideration of the issues regarding Westfeldt's conversion claim to be more appropriate on summary judgment, however, when the Court has a full record before it. This portion of Movants' Motion to Dismiss will therefore be denied.

### V.  Unjust Enrichment (Count VII)

#### A.  Choice Of Law

"Missouri treats unjust enrichment as an action in restitution." *Downing v. Riceland Foods, Inc.*, 2015 WL 1299229, at *6 (E.D. Mo. Mar. 19, 2015) (citing *Title Partners Agency, LLC v. Devisees of Last Will & Testament of Dorsey*, 334 S.W.3d 584, 587-88 (Mo. App. 2011)). The Court thus looks to § 221 of the Restatement, and considers the following contacts when applying the factors from § 6:

>  (a)  the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,
>  (b)  the place where the benefit or enrichment was received,
>  (c)  the place where the act conferring the benefit or enrichment was done,
>  (d)  the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>  (e)  the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

Restatement (Second) of Conflict of Laws § 221; *see also Flynn v. CTB, Inc.*, 2013 WL 28244, at *6 (E.D. Mo. Jan. 2, 2013) (applying Restatement § 221 to unjust enrichment claim).

Upon consideration, the Court notes both the place where the benefit or enrichment was received, and the place where the physical item, whether coffee or money, was situated at the time of the enrichment, was Iowa. As the majority of the remaining factors are neutral or inapplicable, the Court will apply Iowa law to Westfeldt's unjust enrichment claim.

### B. Application

Under Iowa law, "[t]he doctrine of unjust enrichment is based on the principle that a party should not be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." *Brinkmann v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 1750491, at *2 (Iowa App. Jun. 28, 2006) (citation omitted). "One asserting a claim of unjust enrichment must establish three propositions: (1) defendant was enriched by the receipt of a benefit, (2) the enrichment was at the expense of the plaintiff, and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *Id.* at *3 (citation omitted).

Upon consideration, the Court will make the same rulings here as it did with respect to Westfeldt's unfair trade practices claim. In other words, the Court will permit Westfeldt's unjust enrichment claim regarding Ronnoco's alleged action directing U.S. Roasterie to stop payment on a previously issued check for $85,371.23 to proceed. It further will permit Westfeldt's claim regarding the amount of indebtedness it accrued specifically due to Ronnoco's actions during the time period leading up to the asset forfeiture and sale to proceed.

### VI. Futures Contracts (Count VIII)

In its earlier Order, the Court determined Iowa law applies to Westfeldt's futures contracts claim. (*See* ECF No. 43, P. 10 n. 12). The Court further concluded that Westfeldt's futures contracts

claim failed under the Iowa statute of frauds. (*Id.*, PP. 10-14). Upon consideration, the Court finds nothing in Westfeldt's Amended Counterclaim or opposition brief justifies reconsidering or altering this conclusion. This portion of Movants' Motion to Dismiss will therefore be granted.

## VII. <u>Conspiracy To Tortiously Interfere With Contractual Relations Against Eric Bomball And Scott Meader (Count IX)</u>

In the final count of its Amended Counterclaim, Westfeldt asserts conspiracy to tortiously interfere with contractual relations against Eric Bomball and Scott Meader. (Amended Counterclaim, ¶¶ 134-142).[11] In its earlier Order, the Court held that Westfeldt's claim of tortious interference with contractual relations against Meader and Bomball was not cognizable under Louisiana law. (*See* ECF No. 43, PP. 15-16). Westfeldt acknowledges this holding, but now attempts to reassert its claim for conspiracy to tortiously interfere with contractual relations. Under Louisiana law, however, "conspiracy by itself is not an actionable claim." *AGEM Management Serv., LLC v. First Tennessee Bank National Ass'n*, 942 F.Supp.2d 611, 619 (E.D. La. 2013) (citations omitted). "The actionable element of a conspiracy claim is not the conspiracy itself, but rather the tort that the conspirators agree to perpetrate and commit in whole or in part." *Id.* (citation omitted). Thus, because there is no cognizable claim for tortious interference against Meader and Bomball, there likewise can be no cognizable claim for conspiracy to tortiously interfere against them.[12] This portion of Movants' Motion to Dismiss will therefore be granted.

## CONCLUSION

Accordingly,

---

11 The Court previously determined that Louisiana law should apply to Count IX. (*See* ECF No. 43, PP. 14-15).
12 The Court does not find Westfeldt's insertion of an allegation that Meader and Bomball came to an agreement with the corporate officers of U.S. Roasterie sufficient to save its claim. Rather, the Court agrees with Movants that Louisiana courts would not permit a "conspiracy end run" around their well-established law that tortious interference claims are permitted only against employees of the contracting entity.

**IT IS HEREBY ORDERED** that the Motion to Dismiss Amended Counterclaims and Third-Party Complaint of Plaintiffs/Counterclaim Defendants Ronnoco Coffee, LLC and Mid-America Roasterie, LLC, and Third-Party Defendants Scott Meader and Eric Bomball (ECF No. 49) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

**IT IS FURTHER ORDERED** that Westfeldt's request for leave to amend its First Amended Counter-claims and First Amended Third-Party Complaint is **DENIED**.

Dated this 22nd Day of May, 2017.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE